UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 4:09-CV-512-BLW |
|---|---|
| Plaintiff-Respondent | 4:01-CR-196-BLW |
| v. | **ORDER** |
| JOHN ERNEST DADE, | |
| Defendant-Movant. | |

# INTRODUCTION

Pending before the Court is John Ernest Dade's ("Dade") Motion for Leave to Conduct Discovery (Dkt. 32) filed in connection with his Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 29). For the reasons set forth below, the Court will grant the Motion in part. The Court will not address the merits of Dade's claims at this time.

# BACKGROUND

Dade filed a 38-page *pro se* § 2255 Motion (Dkt. 1) supported by a 49-page Memorandum (Dkt. 1-1) and a 50-page Declaration (Dkt. 1-2). He raised over sixty issues and sub-issues. Dade also filed a Motion for Discovery (Dkt. 2), Affidavit of Recusal (Dkt. 3), and Motion to Expand the Record (Dkt. 4). In his § 2255 Motion, Dade requested counsel, and the Government joined in his request in its Response (Dkt. 5).

Order - 1

The Court appointed counsel to file an amended § 2255 motion.  It denied the Motion for Discovery and Motion to Expand the Record without prejudice to refiling should appointed counsel deem them warranted.  *See Order*, Dkt. 6.

Through appointed counsel, Dade filed the pending Amended § 2255 Motion alleging four claims of ineffective assistance against trial counsel Steven Richert, two of which were also alleged against trial counsel Scott Hansen, and one claim of denial of right to self representation at trial.

Dade seeks leave of Court to conduct discovery in support of his claims of ineffective assistance of counsel and to narrow the focus of any evidentiary hearing which may be conducted in this case.  The Government contends that the record contains sufficient evidence upon which to deny the Amended § 2255 Motion without a hearing. However, if granted, the Government believes the inquiry should be limited to whether counsel received plea offers, the nature of any offers, whether counsel communicated the offers to Dade, and Dade's responses to any offers.  The Government further states that it has made available to counsel all documents in its file and will continue to do so.

## LEGAL STANDARD

Unlike the usual civil litigant, a habeas petitioner is not entitled to broad discovery as a matter of course.  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  *See also Harris v. Nelson*, 394 U.S. 286 (1969); *Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993) ("[T]here is simply no federal right, constitutional or otherwise, to discovery in habeas proceedings . . . .").  However, "[a] judge may, for good cause, authorize a party to

conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practice and principles of law." *Rule 6 (a) of Rules Governing Section 2255 Proceedings* ("2255 Rules").

A party may only utilize the discovery procedures available under the Federal Rules of Civil Procedure "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Bracy, id.* (addressing the substantially similar Rule 6(a) of the Rules Governing Section 2254 Proceedings). Good cause exists when there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Id.* at 908-09.

The discovery rule requires that the requesting party seek leave of court providing reasons for the request and including any proposed interrogatories, requests for admissions, or document requests. *2255 Rule 6(b)*. Doing so enables the Court to evaluate whether the discovery would lend support to adequately articulated claims involving specific factual allegations. Discovery is not to be used for "fishing expeditions to investigate mere speculation" or for a prisoner to "explore [his] case in search of its existence." *Calderon v. U.S. District Court (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996) (citations omitted).

## ANALYSIS

The Amended § 2255 Motion states that it is based in part on Dade's Sworn Declaration (Dkt. 1-2) filed with his pro se § 2255 Motion (Dkt. 1). Dade has complied

Order - 3

with Rule 6(b) by stating that he expects the discovery to support and narrow his claim, by identifying the requested documents, and by identifying the individuals whom he wishes to depose. Having reviewed the Declaration and the Amended § 2255 Motion, the Court makes the following findings as to each discovery request.

1.  **Request for Production of Documents, Electronically Stored Information and Things Pursuant to Fed. R. Civ. P. 34**.

    A.  **Plea Offers**

    In support of his claim of ineffective assistance of counsel against Hansen and Richert for failure to convey and adequately explain plea offers, Dade requests "[r]ecords of all communications, writings, memoranda, or e-mails which relate to any plea agreement offers or proposals which were conveyed to Dade's counsel by the government or any agent of the government at any time during the history of this case." *Mot. for Leave to Conduct Discovery* at ¶ 1, Dkt. 32. As noted above, the Government has responded that it has essentially opened its file in this case to Dade's counsel. Therefore, this request is moot.

    B.  **Audiotape Evidence**

    In support of his claim of ineffective assistance of counsel against Richert for failure to investigate the audiotape evidence, Dade requests inspection by a qualified independent expert of all audiotape evidence obtained by law enforcement or at its direction in connection with the investigation or trial of this case.

    Dade's Declaration cites several conversations he had with Richert regarding the

tapes. For example, Dade states that on or about June 10, 2002, he "repeatedly" told Richert that the tapes had been dubbed together, that his statements were taken from several different conversations, and that the tapes had numerous blank spots. *Decl.* ¶¶ 23; 31. He estimates, based on a comparison of the tapes with his phone bills, that about 63% of the conversations are missing. *Id.* ¶ 31(A). Dade also told Richert on June 10, 2002 that a classmate of the victim was an expert in reel-to-reel recording devices who could "make the tapes say anything they wanted them to." *Id.* ¶ 23. Richert allegedly told Dade that he would hire an audio expert to examine the tapes. *Id.*

On the other hand, as the Government points out in its Response, Dade has failed to specify which portions of the ten recordings admitted into evidence were erased or dubbed together. More significantly, Dade did not challenge their authenticity during his testimony at trial.

The record reflects that AUSA Peters questioned Dade extensively about the recordings and had him read portions of the transcripts, many of which contained notations of "break-in-tape," "unintelligible, " and the like. *Tr.* at 1338-52. Despite those notations, without questioning their authenticity, Dade testified that he had listened to the tapes before trial (although the Court notes that he also testified that he could not hear all of them), admitted he was a participant in the conversations and that the voice was his, and agreed that he had made the threats to the victim that were on the tapes. *Tr.* at 1289-90; 1323.

The Court notes that AUSA Peters went to great lengths to lay a foundation for

Order - 5

admission of the tapes eliciting testimony from FBI Special Agent Richard Worms explaining various issues with the tapes including a possible cracked head in the recording device, interference by the victim's incidental movements during the conversation, and other background noises. *Tr*. at 350-64. Furthermore, Agent Worms and AUSA Peters made clear to the Court and the jury that the tapes did not represent recordings of every conversation or entire conversations between Dade and the victim but only the portions most relevant to the charges. *Id*.

With the exception of omitting any reference to specific parts of the tapes that were dubbed or omitted, Dade made reasonably specific allegations in his Declaration suggesting counsel's need to investigate. However, those allegations are undercut by his own testimony. The Court concludes that Dade's claim that an expert's examination would have revealed tampering, dubbing, or splicing is merely speculative and conclusory as well as implausible given his failure to raise the issue during his testimony. Indeed, he appears to be attempting to embark on the proverbial fishing expedition discouraged in *Calderon, supra*. Accordingly, the Court finds that Dade has not shown good cause for ordering inspection of the tapes by a qualified expert.

2.  **Leave to Depose Hansen and Richert**

Dade seeks leave to depose Hansen and Richert in support of his claims of ineffective assistance of counsel against them for failure to investigate his alibi defense and for failure to communicate plea offers and against Richert for failure to engage an expert to investigate audiotape evidence. Despite the Court's denial of leave for an expert

Order - 6

to examine the audiotape evidence, the Court will allow counsel to depose Richert regarding Dade's allegations and his decision not to engage an expert prior to trial.

As to his claim regarding the plea offer issue, Dade refers to a conversation with Richert on or about April or May of 2002 regarding a plea deal offered by the Government and Richert's failure to explain the consequences of the proposed agreement. *Decl.* ¶ 13. He states that he again asked Richert in May of 2002 about the terms of the plea deal yet Richert "would never give Dade a [d]efinitive answer concerning Dade's available options and avenues for relief in regards to the government proffered plea agreement." *Id.* ¶ 18. *See also Id.* ¶ 21 (stating that Richert never advised him about the sentence he would face, the advantages or disadvantages of the Government's plea deal, or the option of an "open plea" or a different kind of plea agreement); *Id.* ¶ 35 (stating that if Richert had properly advised him that entering an "open plea" would have entitled him to a 3-level reduction for acceptance of responsibility, he "may" have entered into the profferred plea agreement); and *Id.* ¶ 35(D) (stating Richert never told him that he faced a possible life sentence versus the three to five years offered by the Government).

Finally, as to his claim regarding the alibi issue, Dade refers to a list of alibi witnesses he allegedly gave Richert and the details of their expected testimony supporting his claim that he was not in Idaho on October 20 and 21, 2000, the dates of events giving rise to his conviction of Interstate Domestic Violence (Count 6). *Decl.* ¶ 14. He states that Richert "promised" he would contact the alibi and other witnesses. *Id.* Dade refers to preparing and giving a second list of alibi and other witnesses to Richert on or about

Order - 7

May 15 (presumably 2002) after Richert had lost the original list. *Id*. ¶ 15. He continues that Richert stated that he would hire an investigator and call the alibi witnesses. *Id*. Finally, Dade refers to discovering at the pretrial conference on August 12, 2002, that Richert had not contacted a single alibi witness or hired an investigator. *Id*. ¶ 20.

The Court finds that the paragraphs of the Declaration cited above, which are just a sampling of statements in the 50-page Declaration, provide specific details regarding dates and conversations with Richert sufficient to survive summary dismissal of his claims of ineffective assistance of counsel against Richert regarding the plea and alibi issues. The Court further finds that deposing Richert will aid the parties and the Court in narrowing the issues to be addressed at an evidentiary hearing should the issues not be resolved following any post-discovery motions for summary judgment.

On the other hand, Hansen only represented Dade from January 14, 2002 until the Court granted his Motion to Withdraw on February 15, 2002. *Order*, Dkt. 19. Although Richert did not file a Notice of Appearance (Dkt. 28) until April 4, 2002, he had appeared by filing a Motion to Continue Pretrial Conference and Trial (Dkt. 20) on February 21, 2002. Therefore, it appears that Hansen represented Dade for a very short time and did so prior to the filing of the Superseding Indictment (Dkt. 27). As far as the Court can determine, Dade does not provide any factual support in his Declaration for his allegations that Hansen failed to investigate his alibi defense or convey plea offers. Therefore, the Court will deny the motion to the extent that it requests leave to depose Hansen.

## WAIVER OF ATTORNEY CLIENT PRIVILEGE

"It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) (en banc). A party implicitly waives the attorney-client privilege when he files a lawsuit putting in issue communications otherwise privileged where upholding the privilege would deny the opposing party access to relevant facts. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).

Clearly, Dade has put privileged communications at issue by his allegations and his request to depose Richert. Accordingly, the Court finds that he has waived his attorney-client privilege with respect to communications with Richert regarding plea offers, alibi witnesses, and audiotape investigation. Richert is directed to respond to questions propounded by Dade's current counsel and AUSA Peters at any deposition conducted pursuant to this Order. Any information obtained in the deposition shall be confidential and shall be used only in litigating the claims in this § 2255 proceeding. Should Dade decide that he does not want to waive the privilege, he may abandon his claims. *See Bittaker*, 331 F.3d at 721.

## CONCLUSION

The Court has considerable discretion in allowing discovery if a § 2255 movant satisfies the requirements of Rule 6. Counsel spent several months reviewing the voluminous file in this case, including Dade's numerous repetitive and redundant *pro se*

filings. The Court is confident that counsel has carefully identified potentially viable claims and has further identified discovery that may support those claims.

The Government has advanced what may be valid arguments for summary dismissal. However, the Court's primary interest is in a fair and just resolution of Dade's claims. Therefore, given the history of this case, an abundance of caution and liberal construction of the *pro se* Declaration requires the Court to err on the side of allowing Dade to further develop some of his claims through discovery. Granting a portion of the discovery requests will, as counsel suggests, result in judicial economy in ultimately resolving Dade's claims.

## ORDER

**IT IS ORDERED** that Dade's Motion for Leave to Conduct Discovery (Dkt. 32) is **MOOT** in part, **DENIED** in part, and **GRANTED** in part as follows:

1. Dade's request for production of documents regarding any plea agreement offers or proposals conveyed to Dade's counsel by the Government or its agents at any time during the history of this case is **MOOT** given the Government's standing offer of its entire file to counsel to review.

2. Dade's request for inspection by a qualified independent expert of all audiotape evidence obtained by or at the direction of law enforcement in connection with the investigation or trial of this case is **DENIED**.

3. Dade's request for leave to depose Attorney Scott Hansen is **DENIED**.

4. Dade's request for leave to depose Attorney Steve Richert regarding the

Order - 10

issues of failure to communicate and adequately explain plea offers, failure to investigate his alibi defense, and failure to engage an expert to investigate the audiotape evidence is **GRANTED** subject to the conditions stated above.

DATED:  **December 2, 2010**



Honorable B. Lynn Winmill
Chief U. S. District Judge