UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent,<br><br>v.<br><br>JOHN ERNEST DADE,<br><br>                    Defendant-Movant. | Case No. 4:09-cv-00512-BLW<br>                    4:01-cr-00196-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is John Ernest Dade's ("Dade") Amended Motion to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Amended § 2255

Motion") (Dkt. 29) and the Government's Motion for Summary Judgment (Dkt. 45).

Having reviewed the motions and the underlying record in the criminal and civil cases,

the Court enters the following Order granting summary judgment in the Government's

favor and dismissing the Amended § 2255 Motion.

## BACKGROUND AND SUMMARY OF ISSUES

On September 16, 2002, Dade was convicted by a jury of Counts One, Two,

Three, Four, and Six of the eight-count Second Superseding Indictment (Dkt. 43).  More

specifically, he was convicted of making threatening interstate communications, interstate

stalking, interstate domestic violence on February 18, 2001, use of a firearm in relation to

**MEMORANDUM DECISION AND ORDER - 1**

a violent crime, and interstate domestic violence on October 20, 2000.  On October 23, 2003, the Court imposed a sentence of 336 months.  *Judgment*, Dkt. 260 in criminal case. The Ninth Circuit affirmed his conviction, noting the "overwhelming" evidence of guilt. However, it vacated his sentence and remanded for resentencing in light of *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005), given that the formerly mandatory sentencing guidelines had been effectively rendered advisory by *United States v. Booker*, 543 U.S. 220 (2005).  *United States v. Dade*, 136 Fed. Appx. 973 (9th Cir. 2005).

On August 31, 2006, despite being freed from the constraints of the formerly mandatory guidelines, the Court again imposed a 336-month sentence finding that it was the shortest sentence that would ensure that the victim and other women with whom Dade might become involved would be protected.  *Resent. Tr*. at 92, Dkt. 387-2 at 12 in criminal case; *Judgment*, Dkt. 361 in criminal case.  Dade then appealed his sentence and the Court's denial of his *pro se* Motion for New Trial (Dkt. 359 in criminal case).

On April 22, 2008, the Ninth Circuit affirmed both Dade's sentence and the denial of his new trial motion.  *United States v. Dade*, 275 Fed. Appx. 600 (9th Cir. 2008).  In affirming the denial of the new trial motion, the court stated, "Nothing in Dade's motion for a new trial . . .  leads us to revisit our earlier conclusion that 'the evidence of guilt was overwhelming in this case.'" *Id*. at 601 (citing *United States v. Dade ("Dade I")*, 136 Fed. Appx. 973, 974 (9th Cir. 2005)).

Throughout the criminal case, Dade was represented by a succession of experienced counsel.  Except for brief periods of self-representation, he was represented

**MEMORANDUM DECISION AND ORDER - 2**

by Scott Hansen for approximately one month following his arraignment, by Steven Richert for the remaining pre-trial period through trial, by retained counsel David Finlayson for sentencing and his first appeal, by Kelly Kumm for resentencing, and by Greg Silvey for his second appeal.  Nonetheless, Dade filed hundreds of letters and *pro se* motions both in this Court and at the Ninth Circuit claiming innocence, prosecutorial misconduct, and various instances of ineffective assistance of counsel.  He also appealed virtually every order or decision of this Court and filed petitions for writs of certiorari with the United States Supreme Court following the Ninth Circuit's dismissal of his various appeals.  These *pro se* filings continued well after the Ninth Circuit affirmed his sentence on resentencing.

Despite the Court's repeated instructions to file a short and concise § 2255 motion without argument, Dade filed a lengthy § 2255 motion including a substantial number of repetitive arguments and conclusory allegations raising more than sixty issues and sub-issues.  Among these issues was a request for the appointment of counsel.  The Court considered Dade's request for appointment of counsel (in which the Government joined) against the obvious resulting benefits to the Court given Dade's history of dissatisfaction with and disdain of appointed counsel.

Because of the sheer number of issues Dade raised, the Court determined that having counsel would benefit both Dade and the Court.  The Court reasoned that counsel could evaluate the plausibility of Dade's various claims, narrow the issues, and present those issues in an orderly fashion. Therefore, the Court appointed counsel, Leo Griffard,

**MEMORANDUM DECISION AND ORDER - 3**

and directed counsel to file an amended § 2255 motion setting forth any potentially meritorious claims. *Order*, Dkt. 11.

On May 16, 2010, counsel filed the pending Amended § 2255 Motion consisting of ineffective assistance of counsel claims alleging failure to investigate Dade's alibi defense, failure to communicate proposed plea offers, and failure to investigate audiotape evidence; denial of the right to self-representation; and ineffective assistance of appellate counsel for failure to raise his *Faretta* claim. Counsel also incorporated by reference Dade's original *pro se* § 2255 Motion (Dkt. 1) and Dade's Declaration (Dkt. 1-2), and he filed a motion for discovery (Dkt. 32). The Government responded (Dkt. 38) seeking denial of counsel's motion for discovery and dismissal of all claims based on the existing record.

The Court subsequently granted in part counsel's motion for discovery. *Order*, Dkt. 40. The Court found it moot as to production of documents given the Government's standing offer of its entire file, but granted leave to depose attorney Steve Richert regarding the ineffective assistance of counsel claims. Following Richert's deposition, the Government filed the pending summary judgment motion on the ineffective assistance of counsel issues. Dade's counsel has not filed a reply to the Government's response to the Amended § 2255 Motion or a response to the summary judgment motion. Because Dade is represented by counsel in this proceeding, the Court will not consider any *pro se* filings received after counsel was appointed in reaching its determination on Dade's claims. The Court advised Dade on several occasions that it would not accept or consider

**MEMORANDUM DECISION AND ORDER - 4**

*pro se* submissions after counsel was appointed.  *See, e,g., Orders*, (Dkts. 6 and 44)

## LEGAL STANDARD

**1.      § 2255 Standard**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record.  *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing

**MEMORANDUM DECISION AND ORDER - 5**

Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

**2.     Summary Judgment Standard**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.*

**MEMORANDUM DECISION AND ORDER - 6**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

The Government's summary judgment motion is based on the record, the deposition of Steve Richert, and the four exhibits admitted at the deposition: correspondence between Richert and AUSA Jim Peters regarding plea negotiations

**MEMORANDUM DECISION AND ORDER - 7**

(*Exhibit 1* (Dkt. 45-2, pp. 35-37)); a proposed plea agreement pursuant to which Dade would have pleaded guilty to Counts Two and Three of the Second Superseding Indictment alleging interstate stalking and interstate domestic violence (*Exhibit 2* (Dkt.45-2, pp. 38-46)); a copy of the affidavit submitted in support of a search warrant containing Dade's comments and notations regarding the facts alleged in the affidavit (*Exhibit 3* (Dkt. 45-2, pp. 47-70)); and Richert's billing records pertaining to his representation of Dade (*Exhibit 4* (Dkt. 45-2, pp. 71-88)).

The Government's summary judgment motion is addressed to the three ineffective assistance of counsel claims in Dade's Amended § 2255 Motion. The Government relies on its Response in requesting dismissal of the remaining two claims without an evidentiary hearing.

Rule 7 of the Rules Governing Section 2255 Proceedings allows for depositions and provides an opportunity for the party against whom they are offered to admit or deny their correctness.  As stated above, Dade has not responded to the summary judgment motion. Although the Amended § 2255 Motion was based on Dade's *pro se* Declaration (Dkt. 1-2) filed with his *pro se* § 2255 Motion, the Declaration contained primarily conclusory allegations and was obviously made before Richert's deposition was taken. Dade has not responded directly to Richert's deposition testimony.

## 1.    Ineffective Assistance of Counsel Claims

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice.  *See Strickland v.*

**MEMORANDUM DECISION AND ORDER - 8**

*Washington*, 466 U. S. 668 (1984).  Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel.  *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance."  *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ."  *Id*.  For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  The *Strickland* standard is "highly demanding."  *Kimmelman v. Morrision,* 477 U.S. 365, 381-82; 386 (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment."  *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting

**MEMORANDUM DECISION AND ORDER - 9**

*Strickland*, 466 U.S. at 687).

### A.    Failure to Investigate Alibi Defense

Dade contends that he was denied his Sixth Amendment right to the effective

assistance of counsel because his appointed trial counsel, Scott Hansen and Steven

Richert, failed to investigate his alibi defense concerning the night of October 20-21,

2000, which formed the basis of his conviction on one of the interstate domestic violence

charges (Count 6).  He contends that counsel failed to interview witnesses Brett and Mary

Henderson, Tia McCleary, Wanda Hackman, and Charlie Saunders whom he claims

would have all testified that he was not in Idaho on that evening.[1]

The Court previously determined that Hansen's short and limited involvement in

the case was not a sufficient basis for any ineffective assistance of counsel claims.  *See*

*Order* at 8, Dkt. 40 (noting that Hansen only represented Dade from January 14, 2002 to

February 15, 2002).  Even if Hansen's performance had been deficient during that time

period, any prejudice from that performance would have been negligible and undoubtedly

cured by Richert's involvement in the case.

As more fully set forth in the Government's summary judgment motion, Dade

essentially admitted that he was with the victim in Idaho Falls on the night of October 20-

21, 2000.  In March of 2002, in preparation for filing a motion to suppress, Richert had

---

[1] Richert's time records indicate that he spoke with Tia McCleary on many occasions and that he spoke with Brett Henderson on at least one occasion (August 24, 2002).  *See generally Ex. 4*, Dkt. 45-2 at 71-88.

**MEMORANDUM DECISION AND ORDER - 10**

sent Dade a copy of the affidavit on which the warrant for a search of his home had been based. *Richert Dep. Tr.* at 13-14; 24-25. Dade made handwritten comments on his copy of the affidavit noting several "corrections" to the agent's statements; his ability to offer "corrections" to the agent's affidavit clearly indicate, rather than deny, his presence. *Richert Dep. Tr.* at 14-15; 25-27; *Ex. 3*, Dkt. 45-2 at 47-70.

Richert also testified that Dade did not raise the possibility of an alibi until well after he made his comments on the search warrant affidavit. *Id*. at 14, 16. In support of his claimed alibi, Dade provided Richert with the name of his girlfriend, Tia McCleery, who was a witness at trial, and other individuals, but he did not provide contact information. *Id*. at 14, 15. Richert did contact Tia McCleery and one other individual, but neither of them provided information supportive of the alibi defense. Although Richert did not know for certain, he believed Dade to be lying and questioned him in such a way at trial so as not to elicit perjured testimony. *Id*. at 27-28.

The failure to interview or investigate a potential witness can constitute ineffective assistance of counsel. *See Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994). However, *Strickland* "permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*). Also, "[a]n attorney can avoid activities that appear 'distractive from more important duties.'" *Id*. at 789 (citing *Bobby v. Van Hook*, 131 S.Ct. 13, 19 (2009) (*per curiam*)). With respect to alibi evidence in particular, an attorney need not present an alibi defense of which he is aware if he has a "reasonable strategic reason" not

**MEMORANDUM DECISION AND ORDER - 11**

to do so.  *Alcala v. Woodford*, 334 F.3d 862, 871 (9th Cir. 2003).

Here, Richert's decision not to investigate the alibi defense further after contacting two witnesses was reasonable.  Dade delayed raising the defense for several months. More importantly, however, his notations on the search warrant affidavit contradicted the alibi defense.  Not only did Dade *not* deny his presence on October 20-21, 2000, he provided *his* version of the events of that evening in great detail.[2]  *Ex. 3*, Dkt. 45-2. Richert's decision not to investigate the alibi defense further and pursue it at trial was objectively reasonable under the circumstances of this case.

Based on the unrebutted deposition testimony and exhibits, the Court finds that there is no genuine issue as to any material fact and that the Government is entitled to judgment as a matter of law on Dade's claim of ineffective assistance of counsel based on failure to investigate his alibi defense.

## B.     Failure to Convey Plea Offers

Dade alleges that he was denied his Sixth Amendment right to the effective assistance of counsel because counsel failed to convey or adequately explain all pretrial plea agreement offers of the Government. He contends that if counsel had adequately explained the benefits of a plea agreement and assisted him in weighing the benefits

---

[2]  For example, with regard to paragraph 22 of the search warrant affidavit describing how Dade had arrived uninvited on the evening of October 20, 2000, Dade wrote, "Got into a fight over her boyfriend." Dkt. 45-2 at 55.  In paragraph 23 of the affidavit describing that Dade pulled the victim's pants off, Dade wrote, "All (sic) ready off she had no clothes on." *Id*. at 56.  In paragraph 24 describing that Dade restated that he was going to kill the victim and himself, Dade wrote, "Why don't you just kill me it would be better is what I said." *Id*.  He made several other similar notations on the paragraphs of the affidavit describing the events of October 20-21, 2000. *See, id.* at 56-57.

**MEMORANDUM DECISION AND ORDER - 12**

against the risks of going to trial, he would have entered into a plea agreement and received a much lower sentence.

Plea negotiation is a critical stage of a criminal proceeding for Sixth Amendment purposes, triggering a right to effective assistance of counsel. *Padilla v. Kentucky*, 130 S.C.t 1473, 1486 (2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  The *Strickland* standard applies to claims of ineffective assistance of counsel during the plea process just as it does to other critical stages of a criminal proceeding.  *Hill*, 474 U.S. at 57.

Counsel's failure to communicate a plea offer constitutes ineffective assistance of counsel.  *United States v. Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994); *see also United States v. Day*, 285 F.3d 1167, 1171 (9th Cir. 2002).  To establish prejudice, a movant must "prove that there was a reasonable probability that he would have accepted the offer" that had not been communicated.  *United States v. Gaitin*, 229 F.3d 1159, *1 (9th Cir. 2000) (citing *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997)).

Where counsel *has* communicated the terms of a plea offer, a court must decide whether counsel communicated and explained the plea offer sufficiently under prevailing professional standards and whether the movant would have accepted the offer had it been explained sufficiently.  *United States v. Rivera-Sanchez*, 222 F.3d 1057, 1060 (9th Cir. 2000).  If counsel has explained to his client that he would receive a greater sentence than that offered in the plea agreement and that it would be in his best interest to accept it, a movant cannot establish ineffective assistance of counsel.  *Id.  See also United States v. Carter*, 130 F.3d 1432, 1441-42 (10th Cir. 1997) (finding no ineffective assistance of

**MEMORANDUM DECISION AND ORDER - 13**

counsel where counsel advised the defendant of the sentence he might receive if he went to trial and urged the defendant to accept the offer).

As more fully set forth in the Government's summary judgment motion, Richert testified that he spoke regularly with both AUSA Peters and Dade himself about the possibility of a plea agreement.  *Richert Dep. Tr.* at 6.  He communicated the one written offer the Government proposed.  However, Dade never wavered from his position that he would not plead to anything but a misdemeanor with a sentence of five years of probation.  *Id*. 6-12; 30.  Even when informed that the Government was going to seek an indictment on additional charges, he remained adamant in his position.[3]

Introduced as Exhibit 1 to Richert's deposition was a copy of a letter dated March 21, 2002 from AUSA Peters to Richert noting Dade's refusal to plead to anything but a misdemeanor, noting Dade's continued harassment and stalking of the victim while his state court battery case was pending and while on probation on that charge, advising that a superseding indictment adding several firearms charges was pending, and noting the lengthy sentence he would receive if convicted of the firearm charges.  *Richert Dep. Ex. 1*.  More importantly, AUSA Peters advised of the possibility that the sentence on the firearm violations alone would be 32 years.  *Id.*

Also part of Exhibit 1 was Richert's letter of March 22, 2002, to Dade enclosing AUSA Peters' letter, advising of the severity of the sentence he would receive if

---

[3] Dade has repeatedly stated in his numerous filings and letters that his conduct would have been charged as misdemeanors in state court.

**MEMORANDUM DECISION AND ORDER - 14**

convicted of the firearm charges, and advising that his sentence would be only about two years imprisonment if he accepted the Government's offer. *Id.* Attached as Exhibit 2 was a draft of the proposed plea agreement pursuant to which Dade could have pleaded guilty to one count of interstate stalking and one count of interstate domestic violence. *Id.*, Ex. 2.

Richert's time records support his testimony that he discussed the possibility of a plea on several occasions with Dade up to and throughout the trial. *Id.*, Ex. 4. For example, in addition to entries surrounding the time of the March 2002 letters, entries dated June 14 and June 17, 2002, refer to receiving and reviewing a plea agreement with Dade, and an entry dated July 23, 2002, indicates that he met with Dade regarding a possible plea. *Id.*

As stated above, Dade has not responded to or rebutted any of Richert's deposition testimony. His mere conclusory allegations that Richert did not communicate or explain the risks of going to trial are insufficient to prevail in view of Richert's sworn deposition testimony and the documentary evidence attached to the deposition testimony. They both clearly demonstrate that Richert did advise Dade of the initial plea offer, discussed *in writing* the dangers of proceeding to trial, and continued to discuss the possibility of pleading up to and during trial.

Richert's letter, together with AUSA Peters' letter, could not have been more clear regarding the severity of the sentence Dade would receive if he was convicted at trial. Like the court in *Jones v. Wood* found, this Court has no doubt that Dade would have

**MEMORANDUM DECISION AND ORDER - 15**

taken the plea if he had known the result at trial.  114 F.3d at 1012.  Also like the court in *Jones*, this Court does not believe there was a reasonable probability at the time of the written offer – or any subsequent oral offers – that Dade would have agreed to serve any time in prison for crimes he insisted he did not commit or that he insisted, at most, were misdemeanors for which he should be sentenced to probation.  *Id.*

Based on the unrebutted deposition testimony and exhibits, the Court finds that there is no genuine issue as to any material fact and that the Government is entitled to judgment as a matter of law on Dade's claim of ineffective assistance of counsel for failure to investigate his alibi defense.

### C.      Failure to Investigate Audiotape Evidence

Dade alleges that he was denied his Sixth Amendment right to the effective assistance of trial counsel because Richert failed to retain the services of an expert to determine whether the audiotapes of conversations between him and the victim – which she recorded – were altered.  He believes there is a reasonable possibility that he would not have been convicted if the evidence had been excluded.

Dade's Declaration cites several conversations he had with Richert regarding the tapes.  For example, Dade states that on or about June 10, 2002, he "repeatedly" told Richert that the tapes had been dubbed together, that his statements were taken from several different conversations, and that the tapes had numerous blank spots.  *Decl.* ¶¶ 23; 31.  He estimates, based on a comparison of the tapes with his phone bills, that about 63% of the conversations are missing.  *Id.* ¶ 31(A).  Dade also told Richert on June 10, 2002

**MEMORANDUM DECISION AND ORDER - 16**

that a classmate of the victim was an expert in reel-to-reel recording devices who could

"make the tapes say anything they wanted them to." *Id.* ¶ 23.  Richert allegedly told

Dade that he would hire an audio expert to examine the tapes.  *Id.*

As more fully set forth in the Government's summary judgment motion, Richert

testified that he listened to all of the tapes and obtained a court order to require the staff at

the Bannock County Jail to allow Dade to listen to copies of the tapes.  *Richert Dep. Tr.*

at 17-18.  Dade complained that the tapes were not complete, but it was not until just

before trial that he suggested that the tapes may have been altered or "cobbled together."

*Id.* at 19.  However, Dade did not bring to his attention any specific examples of

suspected alterations.  *Id.* at 18, 20, and 21.

Richert had spent about 19 hours listening to the tapes.  *Richert Dep. Tr.* at 22-23;

*Exhibit 4* at 2, 3, 4, 5, 7, 8, 9, 10, and 12.  After Dade raised his concerns about

tampering, Richert took a "handful" of tapes to a local company that makes audio tapes to

informally check the quality of the tapes.  *Id.* at 21. Their examination revealed nothing of

concern. *Id.*

Dade has not responded to Richert's deposition testimony.  His allegations in his

Declaration filed with his initial § 2255 Motion are totally conclusory and unsupported

and reflect a general paranoia and preoccupation with the fact that the tapes are not

complete.  The allegations do not reflect a need for further investigation.  *See United*

*States v. Hurd*, 642 F.2d 1179, 1183-84 (9th Cir. 1981) ("A defendant's unsupported

allegation that the government has tampered with evidence [tape recordings] does not

**MEMORANDUM DECISION AND ORDER - 17**

automatically require an expert investigation.").  As stated above, *Strickland* "permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" *Harrington*, 131 S.Ct. at 788.[4]

Based on the unrebutted deposition testimony and exhibits, the Court finds that there is no genuine issue as to any material fact and that the Government is entitled to judgment as a matter of law on Dade's claim of ineffective assistance of counsel for failure to investigate audiotape evidence.

**2.    Remaining Claims**

**A.    Denial of Right of Self-Representation**

Dade alleges that he was denied his Sixth Amendment right to represent himself at trial after he moved to discharge Richert prior to trial.  Dade contends that although the Court conducted a *Faretta* hearing on July 2, 2002, it did not explicitly rule on his request, the *Faretta* hearing was not adequate, and the Court erred.  In the Amended

---

[4]  The Court notes that AUSA Peters went to great lengths to lay a foundation for admission of the tapes.  He elicited testimony from FBI Special Agent Richard Worms explaining various issues with the tapes including a possible cracked head in the recording device, interference by the victim's incidental movements while conversing, and other background noises.  *Tr.* at 350-64.  Furthermore, Agent Worms and AUSA Peters made clear to the Court and the jury that the tapes did not represent recordings of every conversation or entire conversations between Dade and the victim but only the portions most relevant to the charges.  *Id.*

As the Court noted in its Order (Dkt. 40) denying examination of the audiotapes,  the trial transcript reflects that AUSA Peters questioned Dade extensively about the recordings and had him read portions of the transcripts, many of which contained notations of "break-in-tape," "unintelligible, " and the like.  *Tr.* at 1338-52.  Despite those notations, without questioning their authenticity, Dade testified that he had listened to the tapes before trial (although the Court notes that he also testified that he could not hear all of them), admitted he was a participant in the conversations and that the voice was his, and agreed that he had made the threats to the victim that were on the tapes.  *Tr.* at 1289-90; 1323.

**MEMORANDUM DECISION AND ORDER - 18**

§ 2255 Motion, he requested an opportunity to order the transcript of the hearing and to more fully state his claim.  The transcript was subsequently prepared, but Dade has not replied to the Government's response on this issue or moved to amend or supplement his Amended § 2255 Motion.

The record reflects that the Court set the *Faretta* hearing for July 2, 2002 (which was the day trial was to have commenced) after (1) receiving a fax from Dade indicating that he wanted to represent himself, (2) directing Richert to meet with Dade to discuss his wishes regarding representation, and (3) being advised by Richert that Dade initially decided against self-representation but changed his mind later in the day.  *Faretta Hrg. Tr.* 2-3, Dkt. 520 in criminal case.  *Order*, Dkt. 81 in criminal case.

When asked at the hearing if he still wanted to represent himself, Dade said, "Your Honor, I'm not sure that I actually ever wanted to represent myself."  *Faretta Tr.* at 3. Dade went on to say that he was concerned that he was not ready to go to trial because he had not had an opportunity to listen to the tapes of phone conversations between him and the victim or to review the second grand jury transcript.  *Id.*

The Court noted that one attorney had already withdrawn from the case and that Dade apparently had "some difficulty" working with attorneys.  Therefore, the Court gave Dade the choice of either representing himself or continuing with Richert's representation (with the trial being reset for a date that would allow enough time for Dade to listen to the tapes and review the grand jury testimony).  *Id*. at 3-4.  Dade responded, "I am not sure what I want to do at this point, Your Honor. . . . I am still not sure what to do, Your

**MEMORANDUM DECISION AND ORDER - 19**

Honor." *Id.* at 5.

Finding that Dade was not unequivocally waiving his right to counsel, the Court

stated,

> Mr. Richert is still going to represent you. And we'll just
> continue on that basis.  You have to make an unequivocal
> request to waive your right to counsel and proceed to trial. . . .
> If it's equivocal, that is, you are not being absolutely clear
> with the Court or yourself as to what you intend to do, then I
> have to protect your interests and your rights by providing
> you with legal counsel. So at this point Mr. Richert is still
> your attorney and will continue on that basis until you advise
> the Court unequivocally that you want to represent yourself.

*Faretta Tr.* at 6.  The Court continued to explain to Dade that the better course was to

allow Mr. Richert to represent him and concluded,

> So unless you tell me otherwise at this time I am going to
> have to essentially consider Mr. Richert's motion with the
> Court to withdraw as having been withdrawn because you are
> not unequivocally waiving your right to counsel. It's a
> constitutional right. You can't forego that right unless you are
> absolutely clear that's what you want to do. Is that agreed?

*Faretta Tr.* at 7.

Dade responded that he was still "concerned" until he had an opportunity to see

and hear the evidence.  *Id*.  The Court assured him that he would have that opportunity.

*Id*.  The Court once again stated that Richert was "still on the case" and directed him and

AUSA Peters to work with the Bannock County Jail to ensure that Dade had a tape

recorder and time to listen to all ten hours of the tape recordings.  *Id*. at 8. The Court

emphasized that Richert was trained in the law and might disagree with some of Dade's

**MEMORANDUM DECISION AND ORDER - 20**

suggested defenses, but that ultimately Dade was "the captain of his own ship" and could make his own decision.  *Id*.  Finally, the Court stated that Richert had tried a lot of cases before him with success.  *Id*.  Dade responded, "I have no doubt of his professionalism, Your Honor." *Id*.

The language cited by the Government in its Response clearly illustrates the problems inherent in equivocal requests for self-representation:

> A defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position: If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation, the defendant could claim he had been denied the right to counsel. *See Meeks*, 482 F.2d at 468. The requirement of unequivocality resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel.

*Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989).  *See also United States v. Mendez-Sanchez*, 563 F.3d 935, 945-46 (9th Cir. 2009).

While a defendant has a right to represent himself at trial under *Faretta v. California*, 422 U.S. 806, 819 (1975), if properly advised of the dangers of self-representation, a court's denial of that right is not constitutionally actionable unless the request for self-representation was "unequivocal, timely, and not made for the purpose of delay." *Robinson v. Kramer*, 588 F.3d 1212, 1216 (9th Cir. 2009).  Dade's request was far from unequivocal.  Indeed, he changed his mind several times and expressed

**MEMORANDUM DECISION AND ORDER - 21**

considerable ambivalence during the *Faretta* hearing.  The Court denied the motion to withdraw on that basis.

Dade's only specific criticism of the *Faretta* hearing is that the Court did not make an express ruling.  The record rebuts that allegation.  Furthermore, Richert made arrangements for Dade to listen to the tapes at the Bannock County Jail as directed by the Court.  *Richert Dep.*, Ex. 4. The Court is not aware of any further requests for self-representation prior to or during trial.  Dade's continued acquiescence in Richert's representation throughout trial evidences the equivocal nature of his request for self-representation.

Based on the unrebutted record, the Court finds that Dade's claim of denial of his right of self-representation has no merit and should be dismissed.

**B.     Ineffective Assistance of Appellate Counsel for Failing to Raise the *Faretta* Issue on the First Appeal.**

As stated above, Dade retained David Finlayson to represent him at sentencing and on his first direct appeal.  Dade alleges that Finlayson failed to raise the *Faretta* claim and failed to order the transcript of the *Faretta* hearing.  Dade concludes that had counsel done so, his conviction and sentence would have been vacated, and he would have been granted a new trial.  This is an entirely speculative and conclusory allegation with no support in the record.

Claims of ineffective assistance of appellate counsel are reviewed under the same two-pronged *Strickland* standard used to review the representation provided by trial

counsel. *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001).  However, even before

*Strickland*, the Supreme Court held that a petitioner does not have a constitutional right to

have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463

U.S. 745, 754 (1983).

Eliminating weaker issues with little or no likelihood of success "is widely

recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney*,

882 F.2d 1428, 1434 (9th Cir. 1989).  Weak issues are a distraction from the stronger

issues in a case and lessen counsel's credibility with the court.  *Id.*  Therefore, "a lawyer

who throws in every arguable point – 'just in case' – is likely to serve her client less

effectively than one who concentrates solely on the strong arguments."  *Id.*  An appellate

counsel declining to raise a weak issue "will . . . frequently remain above an objective

standard of competence (prong one) and have caused her client no prejudice (prong two)

for the same reason. . . ."  *Id.*

Even if a movant demonstrates that counsel was ineffective for failing to raise a

particular issue on appeal, he must still demonstrate that the omitted issue would have

been a "winning issue" on appeal.  *Bailey*, 263 F.3d at 1033-34.  In other words, he must

satisfy the prejudice prong of the *Strickland* standard.

Here, Finlayson raised several issues on appeal such as prosecutorial misconduct;

ineffective assistance of counsel for failing to object to certain evidence; denial of his

suppression motion; and plain error for admitting recorded conversations between Dade

and the victim, for admitting expert testimony on battered woman syndrome, and for

**MEMORANDUM DECISION AND ORDER - 23**

admitting evidence of Dade's prior acts.   *See United States v. Dade*, 136 Fed. Appx. 973, *1 (9th Cir. 2008).

Dade has not alleged any defect in the *Faretta* hearing or any error in denying his equivocal request for self-representation.  There is simply no basis for believing that the *Faretta* issue would have been successful on appeal.   This explains why Finlayson did not raise it.  Rather, Finlayson focused on six issues which were potentially more meritorious and substantive.  To have raised the very weak *Faretta* issue would have diverted attention from those six issues for no obvious benefit.

Dade has demonstrated neither ineffective assistance of counsel nor prejudice. Accordingly, this claim is subject to dismissal.

**3.      Claims Incorporated from Initial § 2255 Motion**

As state above, at Dade's and the Government's request, and in the interest of judicial economy, the Court appointed counsel to amend the lengthy and confusing § 2255 Motion to set forth any potentially meritorious claims based on his review of the record and the Government's file.  Counsel's Amended § 2255 Motion raised the claims set forth above and also incorporated all of the claims from the initial § 2255 Motion. The Government did not respond to the claims in the initial § 2255 Motion and advised the Court that it would not do so unless ordered by the Court.  The Court did not so order.

The Court can only surmise that counsel did not find any of the remaining claims in Dade's initial § 2255 Motion to be worth pursuing, but was careful to preserve those issues by incorporating them by reference into his amended motion.  This is not unlike

**MEMORANDUM DECISION AND ORDER - 24**

resentencing counsel Kelly Kumm's failure to find any meritorious claims for a new trial despite Dade's vehement insistence that there were such claims.[5]

The Court will not address individually all of the claims in the original § 2255 Motion. Many have been subsumed in the Amended § 2255 Motion. Many of the others have been repeatedly addressed over the years. However, the Court will briefly discuss some of the issues that Dade has raised most persistently.

### A.      Huntsman Interview

Dade has alleged numerous times that the Court wrongfully sealed, on the grounds of privileged clergy communication, AUSA Peters' notes of his interview with Bishop Dale Huntsman in whom the victim had confided regarding her problems with Dade. Dade initially sought the notes after trial but prior to sentencing after learning from his son that the victim had spoken with Bishop Huntsman and that AUSA Peters had interviewed him. *E.g.*, Dkts. 207 and 209.

After Dade raised the issue, AUSA Peters filed a Declaration (Dkt. 220 in criminal case) explaining that he had interviewed Bishop Huntsman, that Bishop Huntsman confirmed that the victim had confided in him that Dade had committed acts of violence

---

[5]   Indeed, Kumm even moved to withdraw from representing Dade on the grounds that Dade had put him in an "ethical dilemma" with his insistence that Kumm file a motion for new trial. *See Minutes*, Dkt. 348 in criminal case. The Court directed counsel to continue to represent Dade on resentencing and to work with Dade to resolve the ethical dilemma. *Id*. Kumm subsequently filed a motion for Dade to be permitted to file a pro se motion for new trial which the Court granted. *Order*, Dkt. 356 in criminal case. Dade filed the new trial motion (Dkt. 359 in criminal case) which the Court denied. *Order*, Dkt. 372 in criminal case. The Ninth Circuit affirmed that denial. *United States v. Dade*, 275 Fed. Appx. 600 (9th Cir. 2008).

**MEMORANDUM DECISION AND ORDER - 25**

against her, and that she appeared to be afraid of Dade.  *Peters Decl*. at 2-3.  AUSA
Peters listed Bishop Huntsman as a possible witness in the event that the victim's out-of-
court statements could have become admissible as  prior consistent statements or under
the mental state exception to the hearsay rule.  *Id*. at 3.  However, he did not ultimately
call Bishop Huntsman as a witness.  *Id*.  AUSA Peters determined that nothing Bishop
Huntsman said was exculpatory, impeaching of the victim, or material to punishment.  *Id*.
He filed the notes under seal for the Court's *in camera* review.

The Court reviewed the notes, found no exculpatory evidence, and denied Dade's
motion to unseal the notes.  *Order* at 8, Dkt. 249.  Contrary to Dade's assertion, they were
not sealed based on privileged clergy communication.  Rather, they were left sealed on
the grounds that they contained no exculpatory evidence.  *Id*.  The Court has again
reviewed the notes.  They contain simply nothing beyond what AUSA Peters noted in his
Declaration or the victim herself testified at trial.  If anything, had Bishop Huntsman been
called as a witness at trial, his testimony would have been damaging to Dade's case.

## B.    The Victim's Character

Dade has incessantly vilified the victim's character utilizing the most derogatory
terms, claimed that several people would testify regarding her immoral character, and
accused her of perjury for leading the jury to believe that she was "snow white" and a
member in good standing in her church.  He believes that if the jury knew the "truth"
about her character and that she had been "disfellowshipped" from her church, they
would have not believed her testimony.

**MEMORANDUM DECISION AND ORDER - 26**

The Court has reviewed Plaintiff's trial testimony.  Contrary to Dade's assertions, the victim did not portray herself as "snow white."  Rather, she testified that although she grew up in a Christian home, she started "doing things [she] shouldn't do," pulled away from her church, started drinking, started dating people she shouldn't have dated, married someone she "wasn't real proud of," and started dating Dade while she was still in that relationship.  *Tr.* at 751-55.  She testified that in 1998, she wanted to get back into her church, change her life, and repent to her bishop.  *Tr.* at 779.  She testified that she ultimately did start attending church again and that, on occasion, Dade accompanied her.

Richert had moved pursuant to Rule 412 of the Federal Rules of Evidence for leave to introduce evidence and testimony concerning the victim's relationships – including intimate relationships –  with other men during the ten years she and Dade had maintained an intimate relationship.  Dkt. 88 in criminal case.  The Court denied Richert's motion on the grounds that it was of little probative value and would tend to confuse and distract the jury from the task at hand.

Admission of evidence of an alleged victim's sexual behavior or sexual predisposition is barred absent certain specified exceptions.  *Fed. R. Evid.* 412.

> The rule aims to safeguard the alleged victim against invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. . . . .  Rule 412 seeks to achieve these objectives by barring evidence relating to the alleged victim's sexual behavior or alleged sexual predisposition, whether offered as substantive evidence *or for impeachment*, except in designated circumstances in which the probative value of the

**MEMORANDUM DECISION AND ORDER - 27**

evidence significantly outweighs possible harm to the victim.

*Fed. R. Evid.* 412 advisory committee notes (emphasis added).

"[I]mpeaching the victim's truthfulness and showing her capability to fabricate a story 'are not recognized exceptions to Rule 412.'" *United States v. Withorn*, 204 F.3d 790, 795 (8th Cir. 2000) (citation omitted). Furthermore, even under the exceptions, the evidence must be "otherwise admissible." *Fed. R. Evid.* 412(b)(1). Even if evidence is relevant under Rule 402, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Fed. R. Evid.* 403. Admission of such evidence could trigger mini-trials concerning unrelated allegations and increase the danger of jury confusion and speculation. *United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006). The Court must balance the defendant's rights with those of the victim's when deciding whether to admit evidence of a victim's sexual behavior or sexual predisposition. *United States v. Pumpkin Seed*, 572 F.3d 552 (8th Cir. 2009).

As much as Dade has would like to make this case about the victim, it is about his conduct and not hers. Her relationships with other men – whether intimate or not – and her standing with her church were not the relevant issues. The relevant issue was whether Dade engaged in the conduct alleged in the Second Superseding Indictment. To have allowed inquiry into the victim's sexual behavior would have been prejudicial to her and of little value to Dade given the overwhelming evidence against him.

**MEMORANDUM DECISION AND ORDER - 28**

### C.      Intimidation of Robert Schroeder

Dade has claimed that the victim intimidated Dade's sole witness, Robert Schroeder, thus preventing him from testifying freely at the trial.

Mr. Schroeder testified that he worked with the victim, that they became close friends, that they had had a falling out, that on the night of January 11, 2002, she indicated that the FBI was intending to arrest Dade that night, and that she was hoping he would be found in possession of a handgun so he would "get another 20 years." *Tr.* 1278-85.

During AUSA Peters' closing argument, the Court recessed and heard argument on certain issues from counsel.  One of the issues Richert raised was that the victim had threatened Schroeder if he testified.  *Tr.* 1434.  She allegedly told him she would bring up the fact that he had acted inappropriately by taking certain photographs of her son.  *Tr.* 1434.

Richert initially requested a mistrial based on witness intimidation.  However, he admitted that Schroeder testified "as expected" taking into consideration certain evidentiary limitations imposed by the Court.  *Tr.* 1436.  Therefore, the Court denied the motion for a mistrial.  *Id*. 1436-37.

Based on the colloquy with counsel, it is apparent that if indeed the victim had intimidated Schroeder, Dade was not prejudiced because Richert was able to elicit the desired testimony except for that precluded by the Court's earlier ruling.  Accordingly, this claim is subject to dismissal.

**MEMORANDUM DECISION AND ORDER - 29**

## CONCLUSION

In a § 2255 proceeding, a court may consider its own notes or recollections of the case in making its determination. This case is unique in that the Court has had almost constant contact with Dade over a ten-year period either through formal proceedings, including a resentencing, or through hundreds of *pro se* filings or letters to the Court. Furthermore, the Court has had the benefit of having reviewed a psychological evaluation of Dade prior to the original sentencing as well as a neuropsychological evaluation conducted by the same psychologist three years later prior to resentencing. The findings of the neuropsychological evaluation provide explanation and context for Dade's persistence in presenting the same claims over and over again despite evidence and rulings to the contrary. *Resent. Tr.* at 17-52, Dkt. 387 at 17-40 and 387-1 at 1-12.

The Court also recognizes that many of the arguments Dade makes in his initial and Amended § 2255 Motion were raised innumerable times at various stages of this case when he has been represented by several different competent counsel. Not one of those counsel, including his very competent current counsel, has found any merit in his arguments.

The Court has no doubt that Dade will continue to feel that he has been wronged by the judicial system. However, by any objective standard, the Court finds that there is no constitutional deficiency in the underlying criminal proceedings.

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion

**MEMORANDUM DECISION AND ORDER - 30**

unless he has first obtained a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R.

App. P. 22(b).  A certificate of appealability will issue only when a movant has made "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To

satisfy this standard when the court has dismissed a § 2255 motion (or claims within a

§ 2255 motion) on procedural grounds, the movant must show that reasonable jurists

would find debatable (1) whether the court was correct in its procedural ruling, and (2)

whether the motion states a valid claim of the denial of a constitutional right.  *Slack v.*

*McDaniel,* 529 U.S. 473, 484 (2000).[6]  When the court has denied a § 2255 motion or

claims within the motion on the merits, the movant must show that reasonable jurists

would find the court's decision on the merits to be debatable or wrong.  *Slack,* 529 U.S. at

484; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

    After carefully considering the record and the relevant case law, the Court finds

that reasonable jurists would not find the Court's decision on the merits of any of Dade's

claims to be debatable or wrong.  Accordingly, a certificate of appealability will not issue.

---

[6]  The requirements for a certificate of appealability for a § 2255 appeal do not appear to differ
from the requirements for a certificate of appealability for a § 2254 habeas petition related to a state
conviction.  *See United States v. Asrar*, 116 F.3d 1268 (9th Cir. 1997).  Therefore, cases addressing the
requirements in the context of a § 2254 proceeding are pertinent to a § 2255 proceeding as well.

**MEMORANDUM DECISION AND ORDER - 31**

# ORDER

**IT IS ORDERED:**

1.      The Government's Motion for Summary Judgment (Dkt. 45) is

      **GRANTED**.

2.      Movant's Amended Motion to Vacate, Set Aside, or Correct Sentence

      Pursuant to 28 U.S.C. § 2255 (Dkt. 29) is **DISMISSED**.

3.      No certificate of appealability shall issue. Dade is advised that he may still

      request a certificate of appealability from the Ninth Circuit Court of

      Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local

      Ninth Circuit Rule 22-1.  To do so, he must file a timely notice of appeal.

3.      If Dade files a timely notice of appeal, and not until such time, the Clerk of

      Court shall forward a copy of the notice of appeal, together with this Order,

      to the Ninth Circuit Court of Appeals.  The district court's file in this case is

      available for review online at www.id.uscourts.gov.

4.      The Court will not entertain a motion for reconsideration of this decision

      dismissing Dade's Amended § 2255 Motion.

5.      Rather than filing any submissions by Dade, the Clerk of Court has been

      directed to forward them to Leo Griffard for his review so he could address

      with the Court any issues raised in those submissions as he deemed

      necessary.  The Clerk of Court shall no longer do so.

6.      If Dade submits a notice of appeal of this decision, the Clerk of Court shall

**MEMORANDUM DECISION AND ORDER - 32**

docket it.  However, except for the notice of appeal, the Clerk of Court shall

not accept for filing any further motions, miscellaneous filings, or letters

from Dade in this now closed case.



DATED:  **December 16, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 33**